UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| MARY FRANCIS KING )<br>    *Plaintiff* )<br>)<br>)<br>CVS PHARMACY, INC.; CVS CAREMARK, )<br>and REVCO DISCOUNT DRUG CENTERS, INC. )<br>    *Defendants* ) | No. 1:09-cv-209<br>Collier/Carter |

MEMORANDUM AND ORDER

I. Introduction

Plaintiff moves to compel the production of documents generated by claims adjusters working on her insurance claim for worker's compensation benefits arising from an injury she sustained while employed with defendants (collectively referred to as "CVS"). [Doc. 15]. CVS asserts these documents are protected by the work product doctrine. To the extent that adjusting the plaintiff's claim for worker's compensation benefits in the ordinary course of business was the driving force behind the preparation of the requested documents, plaintiff's motion to compel is GRANTED.

II. Relevant Facts and Procedural History

This is an action brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et. seq.*, and the Tennessee Disability Act, Tenn. Code. Ann. § 8-50-1-3, alleging CVS discriminated against her by refusing to allow her to work due to a disability or due to CVS' perception of a disability.

Plaintiff alleges the following: In February of 2007, while working for CVS as a shift supervisor, the plaintiff sustained an injury to her shoulder which required medical treatment.

1

Plaintiff made a claim for worker's compensation insurance benefits. Plaintiff eventually returned to work between March 2008 and early May 2008 as a shift supervisor with certain restrictions on lifting. However, on May 2, 2008, CVS informed plaintiff that she could no longer work unless her physician released her to work with no restrictions. Plaintiff's physician released her to work but restricted her to lifting no more than ten pounds. Because she could not return to work without restrictions, she was terminated. Plaintiff asserts she was able to perform all the essential functions of a shift supervisor with this restriction and that CVS' refusal to accommodate this restriction violated the ADA and the Tennessee Disability Act.

### III. Analysis

The work product doctrine, first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), protects the mental processes of an attorney from inquiry by an opposing party. *Hickman,* 329 U.S. at 511. "The doctrine is designed to allow an attorney to 'assemble information, sift what he considers to be relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] client's interests.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (brackets original) (quoting *Hickman*, 329 U.S. at 510).

The work product doctrine, as it applies to documents and tangible things, is now embodied in Fed. R. Civ. P. Rule 26(b)(3). Under Rule 26, if documents and other tangible things were prepared in anticipation of litigation by or for the other party or by or for the other party's representative, a party may obtain discovery of the materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and

that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3).

"The work-product doctrine is a procedural rule of federal law;" thus, Rule 26(b)(3) applies in diversity cases. *In re Professionals Direct Ins. Co*, 578 F.3d 432 (6th Cir. 2009). The party seeking work product protection bears the burden to show such protection is warranted. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d at 294. Even if a party is able to show substantial need and undue burden to obtain "fact work product," "opinion work product," material reflecting the attorney's mental impressions, opinions, or legal theories, remains unobtainable. *Id.*

The dispute in this case centers on the meaning of "in anticipation of litigation." This phrase as it applies to insurance companies presents an especially thorny problem because insurance companies, by the very nature of their business, have a duty to investigate claims and regularly do so for the purpose of determining whether a claim will be paid and are often involved in litigation with claimants whose claims have been denied. *See Urban Outfitters, Inc. v. DPIC Cos., Inc.*, 203 F.R.D. 376, 379 (N.D. Ill. 2001) ("because of the nature of their work, documents generated by insurance companies investigating claims or potential claims present special challenges when applying the work product doctrine"); *Rinaldi Fast Foods, Inc. v. Great American Ins. Co.*, 123 F.R.D. 198, 202 (M.D. N.C. 1988) ("An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to the claims made on it by its insured").

The Sixth Circuit addressed this issue in *In re Professionals Direct Ins. Co*, 578 F.3d 432 (6th Cir. 2009). In that case, an insurance company sought a writ of mandamus to vacate a

3

discovery order by the district court requiring it to produce documents which the insurance company alleged were work product. The discovery order had been issued in an underlying action, brought by a law firm against the law firm's malpractice insurance company, in which the law firm alleged breach of contract and bad faith in the insurance company's processing of a malpractice claim against the law firm.

In examining this issue of when work product protection attached, the Sixth Court instructed:

> To determine whether a document has been prepared "in anticipation of litigation," and is thus protected work product, we ask two questions: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. United States v. Roxworthy, 457 F.3d 590, 594 (6th Cir.2006). If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection, id. at 598-99, but the burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document." Roxworthy, 457 F.3d at 595 (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir.1992)).

*In re Professionals Direct Ins. Co*, 578 F.3d at 439. In applying these principals, the Court stated, "[m]aking coverage decisions is a part of the ordinary business of insurance and if the 'driving force' behind the preparation of these documents was to assist Professional Direct in deciding coverage, then they are not protected by the work-product doctrine." *Id.* Deciding whether the work product doctrine applies in the insurance context is a "difficult, fact intensive task" which requires an examination of the disputed documents. *Id.* at 439 - 440. The Court concluded the district court had properly ordered the disclosure of documents the insurance company had generated after the law firm had notified the insurance company of a potential malpractice claim but before the insurance company had issued a second reservation of right letter to the law firm. *Id.*

4

at 439. Many of the documents which the Sixth Circuit held were properly disclosed had been prepared by attorneys for the insurance company whom the Court found "had dual functions" in that "[t]hey were advising Professionals Direct on the business decision of whether to deny coverage and they were doing legal work in anticipation of litigation." *Id.* at 439. If the driving force behind preparation of these documents was to assist Professional Direct in deciding coverage, then these documents were not protected by the work product doctrine, even if prepared by attorneys. *Id.*

A number of courts in other jurisdictions have also been faced with this particular discovery dilemma as it relates to insurance companies, and a majority of them have applied a standard based on whether the documents were prepared primarily for the purpose of adjusting the claim or primarily in anticipation of litigation.[1] *See e.g., Caremark Inc., v. Affiliated Computer Serv. Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000) ("[i]f a document would have been created regardless of whether litigation was anticipated or not, it is not work product."); *Guidry v. Jen Marine LLC,* 2003 WL 22038377 *5 (E.D. La. Aug. 22, 20003) ("if the party asserting the privilege cannot make a factual showing that the primary purpose of the insurance investigation was in anticipation of litigation, the court may conclude that the investigation was conducted in the ordinary course of investigating a potential insurance claim."). *Accord Falkner v. General Motors Corp.*, 200 F.R.D. 620, 623 (S.D. Iowa 2001); *S.D. Warren Co. v. Eastern Electric Corp.* 201 F.R.D. 280, 282-84 (D. Maine 2001); *Holton v. S & W Marine, Inc.*, 2000 WL 1693667 * 3 (E.D. La. Nov. 9, 2000).

---

[1]*See S.D. Warren Co. v. Eastern Electric Corp.* 201 F.R.D. 280, 282-84 (D. Maine 2001) for a comprehensive discussion of the variety of approaches employed by courts to determine what insurance company documents are and are not protected by the work product doctrine.

These basic principals have also been applied to worker's compensation cases. *See Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976-977 (7th Cir. 1996); *Barber v. Dolgencorp of Texas, Inc.*, 2010 WL 1375193 (E.D. Tex. Mar. 31, 2010).

The Court now turns to the documents at issue in this case. Determining the validity of a worker's compensation claim and deciding whether to pay and what to pay is an ordinary function of any adjuster reviewing a claim for worker's compensation insurance. Most of the documents submitted for *in camera* review, Bates WC-006 through WC-019, fall into this category. They were prepared by an insurance claims adjuster as part of the claims adjuster's file in the ordinary course of business to determine what worker's compensation benefits the plaintiff was entitled to receive. Anticipation of litigation was not the driving force behind their preparation. Thus Bates WC-006 through WC-019 are discoverable.

On the other hand, Bates WC-001 through WC-005, documents also prepared by a claims adjuster, all make reference to the fact that the plaintiff has retained attorney Doug Hamill to represent plaintiff in her worker's compensation claim. These documents appear to provide information to CVS representatives concerning potential negotiations with plaintiff's counsel to settle plaintiff's worker's compensation claim. Once a claims adjuster begins negotiating with a claimant's attorney, the adjuster is outside the normal business activity expected to adjust an insurance claim. Reports of preparations to negotiate and investigations in aid of such negotiations with an attorney are made in anticipation of litigation and are therefore protected by the work product doctrine.

## IV. Conclusion

Accordingly, for the reasons stated herein, CVS shall provide to the plaintiff within ten

(10) days of entry of this order the following documents: Bates WC-006 through WC-019. The remaining documents submitted for *in camera* review, Bates WC-001 through WC-005, are protected by the work product doctrine and need not be produced.

SO ORDERED.

ENTER:

Dated: April 21, 2010                       *s/William B. Mitchell Carter*
                                                     UNITED STATES MAGISTRATE JUDGE